UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMBER RENAYE COSTON-MOORE, | ) Case No.: 1:06-cv-01183 RC |
| Plaintiff, | ) FINDINGS AND RECOMMENDATION SUSTAINING OBJECTIONS TO THE DECLARATIONS OF TUPUVIAO AND THOMPSON |
| v. | ) |
| L. MEDINA, et al., | ) (Doc. 42) |
| Defendants. | ) |

## I.   Background

In opposition to Defendants' motion for summary judgment, Plaintiff submitted four declarations. (Doc. 41) The declarations purport to be the sworn statements of inmates L. Gallow, Brandy Estrada, P. Thomson and Sabrina Tupuvaio. On March 23, 2012, Defendants requested an evidentiary hearing because they questioned the authenticity of the declarations. (Doc. 42) Defendants based their attack, in part, on the apparent lack of similarity between the signatures on these documents and those on documents filed earlier. Id. at 2.

On March 27, 2012, the Court granted Defendants' request for the evidentiary hearing (Doc. 43), and it was scheduled for April 25, 2012. (Doc. 45) In the order setting the hearing, the Court permitted Plaintiff to withdraw any of the declarations and Defendants to withdraw any of their

1  objections by April 18, 2012.  Id.  In addition, the Court required Plaintiff to provide further
2  information about witness L. Gallow who was not found in CDCR custody.  (Doc. 44)

3  In response, Plaintiff provided Ms. Gallow's full name and address in Sacramento.  (Doc. 51)
4  At the onset of the evidentiary hearing, Defendants reported that the address provided was not correct.
5  However, they located the correct address but were unable to serve a subpoena to Ms. Gallow in
6  advance of the hearing.  Thus, Defendants withdrew their objection to the authenticity of this
7  declaration.  Moreover, for unknown reasons, Defendants withdrew their objection to the authenticity
8  of the Estrada declaration. (Doc. 53)

9  On April 25, 2012, the Court conducted the evidentiary hearing related to the authenticity of
10 the declarations attributed to inmates Tupuvaio and Thompson.  (Doc. 55)  In addition, it heard
11 argument of counsel and Plaintiff related to the relief sought.

12 **II.     The evidentiary hearing**

13 At the hearing, both inmates, Tupuvaio and Thompson, denied having ever seen the
14 declarations before they learned of the hearing, denied they had signed the declarations and denied
15 they had authorized anyone to sign such a declaration on their behalf.   Thompson testified that she
16 was not approached by Brandy Estrada to sign a declaration and is not housed on the same yard as
17 Estrada.  Tupuvaio testified that she is housed on the same yard as Brandy Estrada but is not housed in
18 the same unit.  Based upon this testimony, counsel argued and Plaintiff agreed, that the declarations
19 were not authentic.

20 On the other hand, Plaintiff testified that she had no explanation for the falsity of the
21 documents.  Plaintiff reported that she was housed at a different facility than where the witnesses and
22 Brandy Estrada, were housed.  Therefore, she enlisted the help of Brandy Estrada to obtain the
23 declarations.  She reported that she typed the declaration for Tupuvaio and provided it to Brandy
24 Estrada via the mail.  Also, Plaintiff provided a caption page and a statement attributed to Thompson
25 for Thompson's use in writing out her own declaration.  Plaintiff reported that Ms. Estrada—who is a
26 long-time friend of Plaintiff and former romantic partner—agreed to approach both witnesses and
27 obtain the executed declarations.
28

1    Plaintiff testified that when she received the declarations from Ms. Estrada by return mail, she
2 had no reason to doubt they were authentic. She admitted that she was aware that about five years ago
3 Estrada and Tupuvaio had been convicted of mutual combat after an incident in which Tupuvaio
4 claimed that Estrada had stabbed her. However, Plaintiff claimed that she had forgotten about that
5 incident until after Tupuvaio testified at the hearing. Thus, she reported, that this past incident did not
6 alert her to the fact that Estrada would not have been able to obtain Tupuvaio's signature.
7    Though she did not verify with Ms. Estrada that the declarations were authentic, Plaintiff
8 testified that she had known Ms. Estrada for years and it did not occur to her that Ms. Estrada would
9 falsify them. She denied that she questioned their authenticity before filing them and denied that the
10 writing on the Thompson declaration appeared to be that of Ms. Estrada. She expressed that she had
11 no explanation for what appeared to be the forgery of these two witnesses' signatures.
12    Counsel for Defendants argued that terminating sanctions should be imposed based upon
13 Plaintiff's knowing submission of false evidence to the Court. Plaintiff argued that she did not know
14 or have reason to know the declarations were false and noted that had she known, she would have
15 withdrawn them as authorized by the Court in its March 28, 2012 order (Doc. 45).

**III.    Sanctions may be imposed for submitting false evidence**

Based upon the evidence, it was undisputed that the declarations were not authentic. Thus, it is recommended that the documents be stricken and not be considered when the Court evaluates the motion for summary judgment. On the other hand, Defendants urge the Court to issue terminating sanctions for Plaintiff's act in submitting falsified evidence. Defendants argue that even if Plaintiff did not falsify the documents herself—though they do not concede this--she had reason to know that the documents were not authentic but she failed to conduct any investigation to ensure that they were not forgeries.

Federal courts have broad powers to impose sanctions against parties or counsel for improper conduct in litigation. The Court derives the power to impose sanctions on parties or their counsel from three primary sources of authority, "(1) Federal Rule of Civil Procedure 11, which applies to signed writings filed with the court, (2) 28 U.S.C. § 1927, which is aimed at penalizing conduct that

unreasonably and vexatiously multiplies the proceedings, and (3) the court's inherent power." Fink v. Gomez, 239 F.3d 989, 991 (9th Cir.2001).

### A. Rule 11

Federal Rules of Civil Procedure Rule 11(b) provides that,

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; ...
> [¶]
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . .

When evaluating the imposition of sanctions, Rule 11 requires the Court to consider not whether the party demonstrated subjective good faith in filing the document, but whether the party acted objectively reasonably in doing so. G.C. & K.B. Investments v. Wilson, 326 F.3d 1096, 1109 (9th Cir.2003). "An order imposing a sanction must describe the sanctioned conduct and explain the basis for the sanction." Fed.R.Civ.P. 11(c)(6).

### B. The Court's inherent power to sanction for filing false documents

In addition, the Court has inherent power to sanction parties for improper conduct. Chambers v. Nasco, Inc., 501 U.S. 32, 43–46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); Roadway Express, Inc. v. Piper, 447 U.S. 752, 766, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980); Fink, 239 F.3d at 991. The Court's authority extends to the "inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." Anheuser–Busch, Inc. V. Natural Beverage Distrib., 69 F.3d 337, 348 (9th Cir.1995) (quoting Wyle v. R.J. Reynolds Indus., Inc., 709 F.2d 585, 589 (9th Cir.1983)); see Combs v. Rockwell Intern. Corp., 927 F.2d 486, 488 (9th Cir.1991) ("Dismissal is an appropriate sanction for falsifying deposition"). However, the harshness of an order dismissing a matter should be imposed only in extreme circumstances. Wyle, 709 F.3d at 589. "It is well settled that dismissal is warranted where . . . a party

has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings . . .." Anheuser–Busch, Inc., at 348.

### C. Dismissal as Sanction

In determining whether to dismiss an action, the Court must weigh "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." In re Phenylpropanolamine (PPA) Products Liability Litigation, 460 F.3d 1217, 1226 (9th Cir.2006) (internal quotations and citations omitted). These factors merely guide the Court but are not conditions that must be met before the Court may take action. Id. at 1226 (citation omitted).

### D. Analysis

The Court has reviewed the documents submitted by Plaintiff but is not convinced that Plaintiff should have known they were false.  For example, review of the earlier declaration submitted by Tupuvaio (Doc 35 at 19), demonstrates that the "signature" is a printed name, "Tupuvaio."  The recent document reflects a handwritten signature in cursive writing.  (Doc. 41 at 15) Thus, comparing these two "signatures" would not necessarily place Plaintiff on notice that the second document was forged.

The Thompson declarations are more problematic.  (Docs. 35 at 9-10, 41 at 8-9)  The two declarations of Thompson seem to bear a markedly similar signature. (Doc. 35 at 10, Doc. 41 at 9)  However, the bodies of the documents contain handwriting that is very different.  (Doc. 35 at 9, Doc. 41 at 8)  Thus, the question presented is whether Plaintiff acted reasonably in submitting the document without first having inquired of Estrada about their authenticity.

To make this determination, the Court is to consider "what was reasonable to believe at the time the pleading, motion, or other paper was submitted." CTC Imports and Exports v. Nigerian Petroleum Corp., 951 F.2d 573, 578 (3d Cir.1991) (citing Notes of Advisory Committee on Rules, 1983 Amendment, Fed.R.Civ.P. 11). "The court must consider all circumstances surrounding the submission, *CTC Imports and Exports,* 951 F.2d at 578, including the amount of time the signer had to investigate, whether the signing attorney had to rely on a client for information as to the facts, and whether the signer depended on prior counsel or another member of the bar if the case has been

1 transferred. Advisory Committee Note, 97 F.R.D. at 199." <u>Bradgate Associates, Inc. v. Fellows, Read</u>
2 <u>& Associates, Inc.</u>, 999 F.2d 745, 752 (3d Cir. 1993)

3     Notably, there is no requirement that a declaration be written out by the declaring witness. It is permissible for a declaring witness to adopt the writing of someone else by affixing her name to the declaration under penalty of perjury. Though Plaintiff likely recognized that Thompson did not write the declaration, based upon how much this writing differs from the signature, the fact that the writing did not look similar to Estrada's writing, the Court does not find that Plaintiff should have concluded that the document was forged. The Court notes also that Plaintiff had only a short time to obtain the replacement declarations that were signed under penalty of perjury. This was compounded by the fact that she was not housed at the same prison as the two witnesses. This circumstance forced her to rely upon another person to obtain the declarations. This person, Estrada, was a long-time friend whom Plaintiff trusted. After considering all of the circumstances, the Court does not find that Plaintiff should have realized the need to make inquiry before she submitted the declarations or that they were forged.[1] <u>G.C. & K.B. Investments</u>, 326 F.3d at 1109.

    Finally, the Court does not reject that there *is* evidence that Plaintiff herself falsified the declarations. The appearance of the writing on the Thompson declaration and the type of language used[2] in it seems similar in style to that used by Plaintiff in her own submissions. Moreover, given the similarity of the signature on both of Thompson's declarations--and it is clear that the second signature is not Thompson's—this raises an inference that the earlier declaration is false also. This, of course, would support that Plaintiff falsified both. In addition, more than anyone, Plaintiff has reason to falsify evidence to support her case. However, Plaintiff's argument, that the Court granted her the opportunity to withdraw the declarations and that she could have easily have done so if she knew they

---

[1] The Court does not mean to imply that Estrada forged these declarations. By the same token, it does not find either that Plaintiff *did not* falsify these documents. Based upon the evidence currently before the Court, the Court simply cannot make this determination.

[2] Compare the tendency of the current declaration to write out the full number and follow it with the number in paranthesis ("five (5)" )(Doc. 41 at 8) with Plaintiff's tendency to do the same thing. See e.g., Doc. 35 at 1 ("six (6)"); Doc. 35 at 3 ("five (5)" and "two (2)"); Doc. 35 at 4 ("six (6)"); Doc. 35 at 6 ("Five (5)"; (Doc. 35 at 7 ("thirty (30)); Doc. 38 at 1 ("six (6)"); Doc. 38 at 3 five (5)" and "two (2)"); Doc. 38 at 4 ("six (6)").

were false, rings true.  Thus, the evidence is insufficient to persuade the Court that Plaintiff falsified these documents.

**IV.     Findings and Recommendation**

There is no doubt that the two declarations of Thompson and Tupuvaio, are fabrications.  As a result, the Court recommends that they be stricken.  However, based upon the evidence available to it, the Court cannot find that Plaintiff knew or should have known they were false at the time she filed them.  Thus, the Court does not recommend any further sanction be imposed.

Accordingly, it is **RECOMMENDED**:

1.	The declarations of Pamela Thompson and Sabrina Tupuvaio be **STRICKEN**;

2.	The request for terminating sanctions be **DENIED**.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within 14 days after being served with these Findings and Recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    **April 30, 2012**              /s/ Jennifer L. Thurston
                                       UNITED STATES MAGISTRATE JUDGE